IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **NATIONWIDE MUTUAL INSURANCE COMPANY,** | )<br>)<br>) |
| **Plaintiff,** | )<br>) |
| v. | )<br>)<br>) Civil Action No. 1:23-cv-00152-KD-B |
| **BRETT/ROBINSON GULF CORPORATION and EMOGENE, INC.,**[1] | )<br>)<br>)<br>)<br>) |
| **Defendants.** | ) |

## ORDER

This action is before the Court on Plaintiff Nationwide Mutual Insurance Company's ("Nationwide") Motion for Summary Judgment and Brief in Support (Docs. 47, 48); Defendant Brett/Robinson Gulf Corporation's ("Brett/Robinson") Corrected Response (Doc. 57); Nationwide's Reply (Doc. 59); Brett/Robinson's Motion to Strike (Doc. 54); and Nationwide's Response in Opposition (Doc. 60).

**I.   Findings of Fact**

The "facts," as accepted at the summary judgment stage, "may not be the actual facts of the case." Feliciano v. City of Miami Beach, 707 F.3d 1244, 1247 (11th Cir. 2013). For the purposes of summary judgment, the undisputed facts follow:

Nationwide Mutual Fire Insurance Company issued an Umbrella Liability Insurance Policy ("Policy") to Brett/Robinson, effective February 15, 2020 to February 14, 2021. (Doc. 1 at 3 ¶ 4; Doc 1-2; Doc. 9 at 2 ¶ 11; Doc. 48 at 3). Nationwide, as a result of a merger, is the successor in

---

[1] Entry of default was entered against Emogene, Inc. on August 7, 2023. (Doc. 18).

1

interest to the Policy. (Doc. 1 at 4 ¶ 12; Doc. 9 at 2 ¶ 12; Doc. 48 at 3). Emogene, Inc. ("Emogene") is a "family company" whose shareholders are members of the Hyndman family including sibling–attorneys Claire Puckett ("Puckett") and Patrick Hyndman ("Hyndman"). (Doc. 45-3 at 13, 20; Doc. 48 at 3 ¶ 2, 4 ¶ 5; Doc. 57 at 4 ¶ 2). Emogene owns a condominium unit ("Unit 211" or "IWE 211") at Island Winds East Condominium ("IWE") in Gulf Shores, AL. (Doc. 1 at 2 ¶ 7; Doc. 45-3 at 10; Doc. 45-6 at 16). Emogene contracted with Brett/Robinson to manage and rent out Unit 211 on behalf of Emogene. (Doc. 1 at 2 ¶ 7; Doc. 45-6 at 16–20; Doc. 57 at 5 ¶ 5). Emogene and Brett/Robinson's contract contained an agreement that Emogene would "save [Brett/Robinson] harmless from all damage, cost, expense, liability, cause of action or attorney's fees and court cost, in connection with [Brett/Robinson's] performance or its services provided hereunder from liability from injury suffered by [Emogene] . . . ." (Doc. 45-6 at 19 ¶ 19; Doc. 57 at 5 ¶ 5).

From October 29 to December 26 of 2020, Brett/Robinson leased Unit 211 to a tenant. (Doc. 45-6 at 15; Doc. 48 at 3 ¶ 4). Emogene alleges that during this rental the tenant and guests opened Unit 211's windows and left them open for "extended period(s) of time (days with no air conditioning on)." (Doc. 1-1 at 2 ¶ 7). On December 29, 2020, Brett/Robinson's front desk director, Theresa Melendez ("Melendez"), emailed Puckett about the condition of Unit 211. (Doc. 45-3 at 21; Doc. 48 at 3 ¶ 4). On December 31, 2020, Puckett emailed Melendez that the Hyndman family had submitted a claim to their insurance. (Doc. 45-3 at 20; Doc. 57 at 4 ¶ 1). Puckett's email also asked Melendez if the IWE Homeowners Association ("HOA") and its insurer had been notified. (Doc. 45-3 at 20; Doc. 57 at 4 ¶ 1).

On January 4, 2021, Puckett notified Melendez by email that Emogene held "both Brett Robinson and the HOA accountable for the extensive damage" to Unit 211 and that Emogene "expects to be made whole." (Doc. 45-3 at 13–14; Doc. 48 at 4 ¶ 5; Doc. 57 at 4 ¶ 2–4). The listed

damage included "[r]emediation of the entire condo," "[a]ll new furniture," and "[c]ompensation of lost possible rent" including cancellations. (Doc. 45-3 at 14; Doc. 48 at 4 ¶ 5). Puckett's email again requested that the HOA and its insurer be notified of Unit 211's damage "immediately." (Doc. 45-3 at 13; Doc. 57 at 4 ¶ 3). Puckett's email also communicated that Emogene "is prepared to seek any and all available legal remedies if [it was] not compensated and made whole" as requested above. (Doc. 45-3 at 14; Doc. 48 at 4 ¶ 5). And Puckett's email explained that "[t]his communication was intended to put [Brett/Robinson] on notice of [Emogene's] expectations" and that "any settlement of its claim will clearly have more concrete details." (Doc. 45-3 at 14). Puckett's email did not request that Brett/Robinson notify its insurance carrier regarding the damage. (Id.; Doc. 57 at 4–5 ¶ 4).

On January 6, 2021, Brett/Robinson's in-house counsel, Cheryl Eubanks ("Eubanks"), emailed Puckett to follow up on a conversation the day before. (Doc. 45-3 at 18). Eubanks's email explained that "[w]ith regard to [Puckett's] request that Brett/Robinson contribute monetarily to the remediation expense, [Eubanks] will have to check into the matter and get back with [Puckett]." (Id.). Eubanks advised: "Please understand that any contribution would be gratuitous as Brett/Robinson is not responsible for damages caused by guests." (Id.). On January 7, 2021, Hyndman emailed Eubanks addressing some of the points made in her January 6 email. (Id.). Hyndman's email stated: "We ***COMPLETELY DISAGREE*** with your statement that Brett Robinson bears no responsibility for the damages to IWE 211." (Id.). Hyndman also requested copies of the rental agreement between Emogene and Brett/Robinson and the management agreement between the IWE HOA and Brett/Robinson. (Id.).

On January 6, 2021, Puckett emailed Bruce White ("White") of Whitehaven Insurance Company ("Whitehaven") to request that Whitehaven file a claim with the HOA insurance policy

3

and to state that "[t]his communication shall serve as notice of Emogene's claim." (Doc. 45-3 at 10). Hyndman also emailed White on January 6. (Id. at 9). On January 7, Hyndman emailed the HOA manager, Keith Jiskra ("Jiskra"), regarding the HOA's insurance claim. (Id. at 8–9). By January 7, 2021, the HOA filed its claim. (Id. at 8). On January 12, Jiskra emailed Hyndman that a meeting with the adjuster by the office would be fine. (Id. at 23). Neither Puckett nor Hyndman requested that Brett/Robinson contact its insurance carrier (Nationwide). (Doc. 57 at 6 ¶ 6).

On March 2, 2021, the HOA's insurance carrier, Landmark American Insurance Company ("Landmark"), denied coverage for the HOA's claim via email and certified letter sent by the adjuster, Engle Martin & Associates. (Doc. 45-5 at 6; Doc. 48 at 5 ¶ 8). The denial letter was sent to Jiskra (the HOA manager) and provided the adjuster's investigative findings, the relevant policy provisions of the insurance contract, and the basis for denial. (Doc. 45-5 at 6–13).

On December 16, 2022, Hyndman sent Brett/Robinson a letter, via email and certified mail, demanding $100,000 to settle Emogene's claim, in full. (Doc. 45-6 at 12). Hyndman's letter stated that if Brett/Robinson failed to pay the demand by or before December 22, 2022, Emogene "will proceed with a lawsuit against Brett Robinson for damages and equitable relief." (Id.).

On December 22, 2022, Brett/Robinson first notified Nationwide of the alleged damage to Unit 211 and of a claim by Emogene against Brett/Robinson. (Doc. 45-1 at ¶ 1; Doc. 45-6 at 5; Doc. 48 at 6 ¶ 10). Brett/Robinson's notice to Nationwide came almost two years after Brett/Robinson discovered the damage. (Doc. 45-3 at 21 (Melendez's email dated Dec. 29, 2020); Doc. 45-6 at 5 (liability notice date of loss listed Dec. 27, 2020)).

On December 27, 2022, Emogene filed a complaint in Alabama state court against Brett/Robinson alleging negligence and breach of contract. <u>Emogene, Inc. v. Brett/Robinson Gulf Corporation</u>, Civil Action No. CV-2022-901378, pending in the Circuit Court of Baldwin County,

Alabama ("the Emogene action"). (Doc. 1-1). Emogene's complaint alleges that Brett/Robinson entered IWE 211 for maintenance purposes on "numerous occasions" during the months in which the windows were opened. (Id. at 2 ¶ 5–6). The complaint alleges that Brett/Robinson had constructive notice of the damage based on its knowledge of the tenants violating the closed-window policy. (Id. at 2 ¶ 7). And the complaint alleges that "due to the damage caused by [Brett/Robinson's] renters/tenants, [Emogene] has had to spend an exorbitant amount of money and time on the remediation of the unit due to mold; the repainting of the condo; and either having to throw away [or refurbish] furniture and other personal property in the condo." (Id. at 2 ¶ 10).

On April 28, 2023, Nationwide filed an action against Brett/Robinson in this Court. (Doc. 1). Nationwide seeks a declaratory judgment that it does not owe insurance coverage to and has no duty to defend or indemnify Brett/Robinson regarding the Emogene action. (Doc. 1 at 1). On April 12, 2024, Nationwide moved for summary judgment. (Doc. 47).

## II. Motion to Strike

Brett/Robinson moved to strike (Doc. 54) portions of Nationwide's exhibits, (Doc. 1-2; Doc. 45-4; Doc. 45-5; Doc. 45-6 at 1–10), citing Rule 56(c)(2): "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

A motion to strike under Rule 56(c)(2) will be construed as an objection to be overruled or sustained. When making an objection to admissibility under Rule 56(c)(2), "[t]here is no need to make a separate motion to strike." Fed. R. Civ. P. 56(c)(2) advisory committee's note to 2010 amendment. The plain meaning of this rule shows that "objecting to the admissibility of evidence supporting a summary judgment motion is now a part of summary judgment procedure, rather than a separate motion to be handled preliminarily." Campbell v. Shinseki, 546 Fed. Appx. 874, 879

5

(11th Cir. 2013). This objection "functions much as an objection at trial, adjusted for the pretrial setting." Fed. R. Civ. P. 56(c)(2) advisory committee's note to 2010 amendment.

"The court and parties have great flexibility with regard to the evidence that may be used in a Rule 56 proceeding." 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2721 (4th ed. 2023). "[E]vidence that can be reduced to an admissible form at trial should be considered at summary judgment." Carrizosa v. Chiquita Brands Int'l, Inc., 47 F.4th 1278, 1304 (11th Cir. 2022). Rule 56(c)(2) allows a party to specifically "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

Initially, Brett/Robinson argues that the Nationwide policy has not been authenticated and thus shouldn't be considered by the court. (Doc. 54 at 1). This argument fails to be supported by any merit since Brett/Robinson fails to explain why the document cannot be authenticated at trial or gives any reason to cast doubt on its authenticity.

Next, Brett/Robinson summarily argues that all correspondence from Nationwide and the HOA should not be considered because it has not been authenticated and it is hearsay. (Id. at 2). Again, the authentication argument is not supported by any facts that would indicate that the documents are not authentic and appears to be without merit. As to the hearsay objection, it appears that at least some of the correspondence would be admissible under the business records exception. But for purposes of this order, the court has only relied on the portions of the correspondence which are offered to show notice of the actions of Nationwide (as opposed to any opinions therein that may constitute hearsay).

Last, Brett/Robinson objects to the citations to Brett/Robinson's initial disclosures, summarily stating they are not admissible. (Id.). While the disclosures may or may not be

admissible, there is no argument that the basic facts that Brett/Robinson has provided in the disclosures could not be reduced to admissible evidence through a witness from Brett/Robinson. Accordingly, all of Brett/Robinson's objections are overruled to the extent the court has relied on the documentation.

### III.   Standard of Review

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome" of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," a genuine dispute of material fact exists. Id.

The party moving for summary judgment "bears the initial burden of demonstrating the absence of a genuine dispute of material fact." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011). The movant meets this burden by identifying affirmative evidence (pleadings, depositions, answers to interrogatories, admissions on file, etc.) to support its claim that no genuine dispute of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A). If the nonmovant bears the burden of persuasion at trial, the movant may also make a prima facie showing of summary judgment by demonstrating that the nonmovant's evidence is insufficient to establish an essential element of its claim. Grange Mut. Cas. Co. v. Slaughter, 958 F.3d 1050, 1057 (11th Cir. 2020); Fed. R. Civ. P. 56(c)(1)(B).

If the movant meets its burden under Rule 56(c), summary judgment will be granted unless the nonmovant offers some competent evidence that could be presented at trial showing that there is a genuine dispute of material fact. Celotex, 477 U.S. at 324. If the movant met its burden by pointing "to specific portions of the record . . . to demonstrate that the nonmoving party cannot

7

meet its burden of proof at trial," the nonmovant must "go beyond the pleadings" to designate specific facts showing a genuine issue for trial. Id.; Fed. R. Civ. P. 56(e).

When assessing a summary judgment motion, the court's function is not to make "credibility determinations" and "weigh the evidence." Anderson, 477 U.S. at 248. Instead, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." FindWhat, 658 F.3d at 1307. Thus, summary judgment is only proper when a movant shows that no reasonable jury could find for the nonmovant—even when the evidence and inferences are drawn in the nonmovant's favor.

**IV.   Analysis**

Nationwide seeks a declaratory judgment that it does not owe coverage to Brett/Robinson for the Emogene action and that it has no duty to defend or indemnify Brett/Robinson against the claims and damages in the Emogene action. (Doc. 1 at 8). Nationwide argues that summary judgment is proper because Brett/Robinson breached the Policy's notice conditions and because the Policy's "Fungi" exclusion bars coverage. (Doc. 48 at 7, 17).

Absent a choice of law provision, federal courts in diversity actions must apply state substantive law and the conflict-of-laws rules of the forum state. Erie R.R. v. Tompkins, 304 U.S. 64 (1938); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941). In this diversity action, the parties did not cite to a choice of law provision in the Policy. Alabama is the forum state. Thus, Alabama's conflict-of-laws rules apply. Alabama follows the principle of *lex loci contractus* to apply the law of the state where the contract was made. Cherry, Bekaert & Holland v. Brown, 582 So. 2d 502, 506 (Ala. 1991). Neither party disputes that the contract was delivered to Brett/Robinson in Alabama. Therefore, Alabama law applies to interpretation of the policy.

8

Insurance policies are governed by the general rules of contracts and interpretation. Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co., 817 So. 2d 687, 691 (Ala. 2001). "Insurance companies are entitled to have their policy contract enforced as written." Id. If a policy is clear, then there is no question of interpretation. Id. at 692. Ambiguities in a policy "should be resolved against the insurer," but "ambiguities are not to be inserted by strained or twisted reasoning." Id. The fact that the parties interpret the policy differently does not make the policy unclear. Id. If there is a disagreement over the ambiguity of the policy, the court must "construe the language according to the meaning that a person of ordinary intelligence would reasonably give it." Id.

### A. Duty to Defend

Whether Nationwide has a duty to defend Brett/Robinson depends on the scope of coverage in the Policy and the allegations in the underlying complaint. Ajdarodini v. State Auto Mut. Ins. Co., 628 So. 2d 312, 313 (Ala. 1993). Brett/Robinson, "as the party seeking coverage under the Policy, bears the burden of proving that coverage exists." Pa. Nat'l Mut. Cas. Ins. Co. v. St. Catherine of Siena Parish, 790 F.3d 1173, 1180 (11th Cir. 2015) (citing Ala. Hosp. Ass'n Trust v. Mut. Assurance Soc'y of Ala., 538 So. 2d 1209, 1216 (Ala. 1989)). Nationwide, as the insurer, bears the burden of proving an exclusion applies. Acceptance Ins. Co. v. Brown, 832 So. 2d 1, 12 (Ala. 2001).

#### 1. Notice Conditions

Nationwide argues that Brett/Robinson breached two notice conditions and that each breach relieves Nationwide of any obligation to provide coverage. (Doc. 48 at 8). "Failure of the insured to comply with notice requirements relieves the insurer of liability." Emps. Mut. Cas. Co. v. Smith Const. & Dev., LLC, 949 F. Supp. 2d 1159, 1169 (N.D. Ala. 2013) (citing Reeves v. State

9

Farm Fire & Cas. Co., 539 So. 2d 252, 254 (Ala. 1989)). Therefore, a breach of a notice condition would mean that Nationwide has no duty to defend Brett/Robinson in the Emogene action.

The relevant notice conditions state:

6. Duties in the Event of "Occurrence", Claim or "Suit"
   a. You must see to it that we and your "underlying insurers":
      1) are notified as soon as possible of any "occurrence" which may result in a claim if the claim may involve this policy or any "underlying insurance"; [and]
      2) receive notice of the claim or "suit" as soon as possible; . . . .

(Doc. 1-2 at 23). An "occurrence" is defined by the Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Id. at 19 ¶ 6). A "suit" is defined by the Policy as "a civil proceeding in which injuries or damages to which this insurance applies are alleged." (Id. at 20 ¶ 12). A "claim" is not defined under the Policy, so it shall be given its ordinary meaning. Twin City Fire Ins. Co., 817 So. 2d at 693. The commonly accepted meaning of terms is often found in the dictionary. See Ex parte Am. Cast Iron Pipe Co., 373 So. 3d 1103, 1109 (Ala. 2022) (using Black's Law Dictionary to define the term "agreement"). Black's Law Dictionary defines a "claim" as "[a] statement that something yet to be proved is true;" "[t]he assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional;" and "[a] demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiff asks for." Claim, Black's Law Dictionary (11th ed. 2019).

Generally, the term "as soon as possible" means that the notice be given "within a reasonable time under the circumstances of the case." Pan Am. Fire & Cas. Co. v. DeKalb-Cherokee Ctys. Gas Dist., 266 So. 2d 763, 771 (Ala. 1972). "There are no hard and fast rules about what constitutes 'a reasonable time in view of the facts and circumstances of the case.'" State Farm Fire & Cas. Co. v. Bullin, 537 F. Supp. 3d 1295, 1300 (S.D. Ala. 2021). "Some courts have found

10

that delays of four, six, or eight months were unreasonable as a matter of law." Id. "Other courts have found that much longer delays in providing notice were not unreasonable." Id.; see U.S. Fid. & Guar. Co. v. Bonitz Insulation Co. of Ala., 424 So. 2d 569 (Ala. 1982) (explaining that a five-year delay in providing notice to the insurer was not unreasonable under the circumstances of the case).

In determining whether notice was given within a reasonable time, the court may only consider two factors: the length of the delay and the reasons for the delay. U.S. Fid. & Guar. Co. v. Baldwin Cnty. Home Builders Ass'n, Inc., 770 So. 2d 72, 75 (Ala. 2000). If facts are disputed or conflicting inferences may be reasonably drawn from the evidence, the question of the reasonableness of a delay in giving notice is a question of fact for the jury. Id. However, if the facts are undisputed and the insured fails to show a reasonable excuse for the delay, the court may hold that there has been a breach of the notice condition as a matter of law. Id. "Thus, the determination of the fundamental issue, whether notice of the occurrence or claim was given to the insurer within a reasonable time, rests on the reasonableness of the delay." Id.

The test of reasonableness "is not a subjective one measured merely by the good faith of the insured, but an objective one." CIE Service Corp. v. Smith, 460 So. 2d 1244, 1247 (Ala. 1984). The Alabama Supreme Court has explained:

> Clearly, notice is necessary when there has been such an occurrence as would lead a reasonable and prudent man to believe that it might give rise to a claim for damages. In this connection the test it not a subjective one measured merely by the good faith of insured, but is an objective one, and hence the mere fact that insured believes that an injury resulting from an accident is slight, or that he does not believe that any valid claim will arise out of an accident, is not of itself an excuse for failure to give notice of the accident to insurer . . .'

Pan Am. Fire & Cas. Co., 266 So. 2d at 771 (quoting 45 C.J.S. Insurance § 1056). There are some limited circumstances where otherwise unreasonable delay is excusable:

11

> Generally, delay is excusable in the case of an accident which is trivial and results in no apparent harm, or which furnishes no ground for insured, acting as a reasonable and prudent man, to believe at the time that a claim for damages will arise or that the injury is one insured against. In such case notice is not required until some claim within the coverage of the policy has been presented or is reasonably to be anticipated, in which event the requirement as to notice is satisfied if notice is given within a reasonable time after the situation assumes an aspect suggestive of a possible claim for damages.

Id. (quoting 45 C.J.S. Insurance § 1056).

In sum, the Policy required Brett/Robinson to provide notice to Nationwide as soon as possible (within a reasonable time) of any occurrence (accident) which may have resulted in a claim (a statement something yet to be proved is true, the assertion of a right, a demand for remedy) involving the Policy. The Policy also required Brett/Robinson notify Nationwide within a reasonable time upon receiving notice of any claim or suit (a civil proceeding alleging damages). Whether Brett/Robinson breached these notice conditions turns on the length of the delay and the reasons for the delay.

      **i.**    **Duty to notify of occurrence which may result in a claim**

The following facts regarding the notice conditions are undisputed. On or before December 29, 2020, Brett/Robinson had knowledge of an occurrence (damage to Unit 211). (Doc. 45-3 at 21; Doc. 48 at 3 ¶ 4); (Doc. 45-6 at 5 (liability notice date of loss listed Dec. 27, 2020)). Shortly after the occurrence, Brett/Robinson received emails from Puckett and Hyndman (both attorneys) which stated that Emogene held Brett/Robinson responsible. (Doc. 45-3 at 13–14; Doc. 48 at 4 ¶ 5; Doc. 57 at 4 ¶ 2–4). Puckett's email—on January 4, 2021—expressly stated that Emogene "is prepared to seek any and all available legal remedies if [it was] not compensated and made whole," and that "[t]his communication was intended to put [Brett/Robinson] on notice of [Emogene's] expectations." (Doc. 45-3 at 14). Hyndman's email—on January 7, 2021—expressly stated that Emogene disagreed with Brett/Robinson's belief that Brett/Robinson had no responsibility for the

damage. (Doc. 45-3 at 18). On December 22, 2022, Brett/Robinson first notified Nationwide of the occurrence. (Doc. 45-1 at ¶ 1; Doc. 45-6 at 5; Doc. 48 at 6 ¶ 10). Thus, Brett/Robinson's notice to Nationwide came almost two years after Brett/Robinson discovered the occurrence (December 2020), and almost two years after Brett/Robinson had knowledge that Emogene held Brett/Robinson responsible and was prepared to seek legal action (January 2021).

Nationwide has met its burden of showing that the length of the delay was unreasonable by pointing to evidence in the record. (Doc. 48 at 12–13). Here, the length of the delay was just shy of two years, which is long enough to require the insured to offer evidence of a reasonable excuse for the delay. See, e.g., Nationwide Mut. Fire Ins. Co. v. Est. of Files, 10 So. 3d 533, 536 (Ala. 2008) ("A five-month delay in giving notice is sufficiently protracted as to require the insured to offer evidence of a reasonable excuse for the delay.").

Brett/Robinson concedes that "Puckett and Hyndman may have told Eubanks that they were going to hold Brett Robinson accountable for the damage." (Doc. 57 at 12). However, Brett/Robinson argues that whether the delay in notifying Nationwide was reasonable is a question of fact that should be decided by a jury. In support, Brett/Robinson cites three cases: U.S. Fid. & Guar. Co. v. Bonitz Insulation Co. of Ala., 424 So. 2d 569, 573 (Ala. 1982); State Farm Fire & Cas. Co. v. Hartford Acc. & Indem. Co., 347 So. 2d 389 (Ala. 1977); CIE Serv. Corp. v. Smith, 460 So. 2d 1244 (Ala. 1984). The facts of each case are distinguishable.

In Bonitz Insulation Co. of Ala., Bonitz contracted with a city to construct the roofing and insulation on a school gym. 424 So. 2d at 570. Part of the roofing job was subcontracted to Vulcan. Id. The job was completed in 1972, and Bonitz was informed that the roof was leaking soon after. Id. at 571. Bonitz referred the problem to Vulcan "who attempted to repair the roof on several occasions." Id. The roof had to be completely replaced in 1978, and the city sued Bonitz. Id. Bonitz

13

did not notify its insurer of the problem until the suit was filed. Id. The Alabama Supreme Court explained that whether Bonitz breached its insurer's notice provisions presented a question of fact for trial. Id. at 572. The court reasoned that Bonitz's president presented mitigating circumstances as to the reasonableness of the delay. Id. Bontiz president testified that the type of leak was "not unusual," that he was "unaware of the extent of the problem," and that he thought Vulcan was taking care of the problem. Id. at 573.

Here, Brett/Robinson argues that Puckett and Hyndman only requested the HOA to notify its insurer. (Doc. 57 at 12). But Brett/Robinson knew that the HOA's insurer denied coverage for the claim, (Doc. 45-5 at 6–13), and Brett/Robinson had "not much, if any, success" in contacting the renter to pay for the damage. (Doc. 45-3 at 18). In Bonitz, the insured had referred the problem to a subcontractor who "attempted to repair the roof on several occasions." 424 So. 2d at 571. Unlike the insured in Bonitz, Brett/Robinson had no reason to believe that a third party was taking care of the problem.

In State Farm Fire & Cas. Co., two boy scouts were burned in their tent during a campout. 347 So. 2d at 390. Two volunteer adult leaders—Hale and Kreitner—were charged with negligence a year later. Id. Both leaders had homeowners policies with State Farm. Id. Kreitner talked to a Hartford investigator (the insurer for the Boy Scouts of America) who advised Kreitner to not discuss the accident with anyone else. Id. Hale and Kreitner were sued and notified State Farm shortly after. Id. The Alabama Supreme Court concluded: "We cannot say, as a matter of law, that a reasonable and prudent man would have acted any differently . . . under the circumstances of this case." Id. at 392. The court pointed to the evidence that neither leader knew what their homeowners policies had to do with the accident. Id. Moreover, Kreitner testified that he was not aware that any claim would be made against him until he was served. Id. at 391.

The facts here are different. Brett/Robinson was provided notice of potential claims by two attorneys from the Emogene family. (Doc. 45-3 at 14, 18). Brett/Robinson is a property management company, and this occurrence involves one of the properties it manages. (Doc. 1 at 2 ¶ 7; Doc. 45-6 at 16–20; Doc. 57 at 5 ¶ 5). Brett/Robinson received several communications which indicated that the owners were holding Brett/Robinson responsible for the damage. Contrast these facts with the facts in State Farm. The insureds in State Farm were volunteer leaders, and the accident happened at a campground unrelated to the insured's homes. 347 So. 2d at 390. Further, the State Farm insureds did not receive a letter from attorneys holding them responsible for the accident and threatening a lawsuit.

In Smith, a security company was under contract to provide guard service for an apartment complex. CIE Serv. Corp. v. Smith, 460 So. 2d at 1245. Smith was assaulted and raped in the complex. Id. Smith sued the security company a year later. Id. The security company first notified its insurer of the incident after receiving notice of the lawsuit. Id. The security company's insurer denied coverage claiming that the company failed to comply with notice conditions. Id. The Alabama Supreme Court held that the trial judge did not err in finding that the company's delay in giving notice was reasonable. Id. at 1247. The court reasoned that the intentional criminal act, under the circumstances of the case, excused the company from giving notice until the suit was filed. Id.

Unlike Smith, this case does not involve unforeseeable intentional criminal acts of a third party. Further, the Smith court explained that "if the victim of the crime here had told the security service that she was considering filing a claim against it, . . . then, under those circumstances, it might have been unreasonable for the insured to await the filing of the suit to notify its carrier."

15

Id. In the present case, Emogene told Brett/Robinson that it was prepared to seek legal remedies. (Doc. 45-3 at 14).

Ultimately, Brett/Robinson argues that it "had no reason to believe that Emogene would make a claim or that Brett Robinson could be held liable for the damages" for four reasons. (Doc. 57 at 12, 13). Nationwide argues in its Reply that the excuses not raised by Brett/Robinson in its answers to interrogatories should be disregarded. (Doc. 59 at 2, 3). Although statements by counsel in briefs are not evidence, Brett/Robinson's listed excuses are inferences based on evidence—emails and the agreement. The fact that some of the excuses were not stated in the answers to interrogatories does not make the excuses irrelevant—the reasonableness of an excuse is viewed objectively. Smith, 460 So. 2d at 1247. The four reasons follow.

First, Brett/Robinson argues that it believed the renter of the unit or the HOA's insurer would pay for the damage. (Doc. 45-2 at 7). Yet, as Nationwide has pointed out, "[t]he Policy did not give Brett/Robinson the option of not notifying Nationwide or of delaying notification merely because Brett/Robinson 'believed' that someone else might pay for the damage." (Doc. 48 at 13). Brett/Robinson had a mandatory duty of notification, (Doc. 1-2 at 23), and Emogene made clear that it held Brett/Robinson "accountable." (Doc. 45-3 at 14). Moreover, Brett/Robinson emailed Emogene that it had "not much, if any, success" in contacting the renter to pay for the damage. (Doc. 45-3 at 18). And the HOA's insurer formally denied coverage for the claim on March 2, 2021. (Doc. 45-5 at 6–13). Believing that the renter or the HOA's insurer would pay for the damage was not an objectively reasonable excuse for delaying notification to Nationwide until December 22, 2022.

Second, Brett/Robinson argues that Puckett and Hyndman "only requested the HOA to notify its insurance carrier." (Doc. 57 at 12). Brett/Robinson has failed to cite any authority that

16

this could be considered an objectively reasonable excuse. Puckett clearly stated within a few days of discovering the damage that Emogene held Brett/Robinson responsible for the damage and expected to be compensated or would seek legal remedies against Brett/Robinson. (Doc. 45-3 at 14). Despite Emogene's statements about notifying an insurance carrier, Brett/Robinson clearly had notice that the occurrence may result in a claim involving the Policy.

Third, Brett/Robinson argues that "under the Agreement between Emogene and Brett Robinson, Brett Robinson is not responsible for damage caused to [Unit 211] by a guest and Emogene was required to indemnify and hold Brett Robinson harmless from injury suffered by the owner." (Doc. 57 at 12–13). The fact that Brett/Robinson did "not believe that any valid claim will arise out of an accident, is not of itself an excuse for failure to give notice of the accident to insurer . . .'" Pan Am. Fire & Cas. Co., 266 So. 2d at 771 (quoting 45 C.J.S. Insurance § 1056). Indemnity agreements are not always valid. And even if Brett/Robinson initially had "no reasonable grounds" to believe it was liable for the occurrence based on the indemnity agreement, Brett/Robinson was required to give notice when "some claim within the coverage of the policy ha[d] been presented or [was] reasonably to be anticipated." Pan Am. Fire & Cas. Co., 266 So. 2d at 771 (quoting 45 C.J.S. Insurance § 1056). Again, Puckett had clearly explained to Brett/Robinson via email that Emogene held Brett/Robinson responsible and planned to seek legal remedies if not made whole. (Doc. 45-3 at 14, 18). When Eubanks told Emogene that Brett/Robinson bore no responsibility for the damage, Hyndman responded that Emogene "***COMPLETELY DISAGREED***" with that statement. (Doc. 45-3 at 18). A claim within the coverage in the policy had been presented or was reasonably to be anticipated. It was objectively apparent that the occurrence *may* have resulted in a claim involving the Policy. (Doc. 1-2 at 23).

17

Fourth, Brett/Robinson argues that "Eubanks told Emogene that . . . Brett/Robinson is not responsible for damages caused by guest." (Doc. 57 at 13). This is not an objectively reasonable excuse for the delay in notice. Hyndman replied to Eubanks by stating that Emogene "***COMPLETELY DISAGREED***" that Brett/Robinson was not liable for the occurrence. (Doc. 45-3 at 18). The fact that Brett/Robinson "had investigated the accident and had determined that it was not liable" did not excuse Brett/Robinson from giving notice as soon as possible. S. Guar. Ins. Co. v. Thomas, 334 So. 2d 879, 884 (Ala. 1976).

It was Brett/Robinson's duty to notify Nationwide in a reasonable time after an occurrence that may result in a claim involving the Policy. (Doc. 1-2 at 23). Brett/Robinson knew of the occurrence. (Doc. 45-3 at 21). Brett/Robinson knew that Emogene held Brett/Robinson responsible for the damage and that Emogene intended to take legal action if not made whole. (Doc. 45-3 at 13–14, 18). Objectively, no reasonable fact finder could find that Brett/Robinson's near two-year delay in notice to Nationwide was reasonable. A reasonable and prudent person would know that the occurrence *may* result in a claim. Emogene, as a matter of law, breached a notice condition, and Nationwide is entitled to summary judgment on the duty to defend. See, e.g., Baldwin Cnty. Home Builders Ass'n, 770 So. 2d at 75. ("If the facts are undisputed . . . and the insured does not show justification for the protracted delay, the court may find the delay unreasonable as a matter of law.").

### B. Duty to Indemnify

Finally, Nationwide argues that it has no duty to indemnify Brett/Robinson because it has no duty to defend. (Doc. 48 at 12). Brett/Robinson responds by arguing that "[t]he indemnity issue cannot be determined until the jury in the Emogene case responds to Nationwide's Special Interrogatories or complies the Special Verdict Form." (Doc. 57 at 15).

18

In the recent case of Snell v. United Specialty Ins. Co., 102 F.4th 1208, 1219 n.13 (11th Cir. 2024), the Eleventh Circuit discussed when the duty to indemnify is ripe under Alabama law. Therein, the Court recognized that "under Alabama law, it is 'often' the case that 'a court can only determine whether there is . . . a duty to indemnify—based on facts adduced at the trial of the underlying action.'" Id. at 1217 (quoting James River Ins. Co. v. Ultratec Special Effects Inc., 22 F.4th 1246, 1252 n.5 (11th Cir. 2022)). "The injured party might conceivably recover on a claim, which, as he had alleged it, was outside the policy; but which, as it turned out, the insurer was bound to pay." Ladner & Co. v. S. Guar. Ins. Co., 347 So. 2d 100, 103 (Ala. 1977) (quoting Lee v. Aetna Casualty & Surety Co., 178 F.2d 750, 752, 753 (2d Cir. 1949)). As such, "there will be nothing to indemnify unless and until damages are assessed against the insured in that action." James River Ins. Co., 22 F.4th at 1252 n.5. "But that does not mean . . . that 'the duty to indemnify is not ripe' for decision under Alabama law unless and until 'the insured is held liable in the underlying litigation.'" Snell, 102 F.4th at 1218. "[T]he duty to indemnify under Alabama insurance law *can*, at least under some circumstances, be decided before the underlying action reaches judgment." Id. at 1219.

In Snell, the Court determined that the duty to indemnify was ripe because the determination of the insurer's "obligations depend—not on the facts and legal theories alleged in the underlying complaint—but on [the insured's] insurance application . . . ." Id. In other words, because the unambiguous terms of the insurance contract/application did not provide coverage, both the duty to defend and the duty to indemnify were ripe for determination.

Here, the duty to indemnify issue is ripe because Nationwide's obligation to defend and indemnify is not dependent on the facts developed at trial. Rather, duty is in the first instance dependent on whether Brett/Robinson provided timely notice as required in the insurance contract.

19

Therefore, for the same reason that summary judgment is granted on the duty to defend, summary judgment is also granted on the duty to indemnify.

## V.     Conclusion

Viewing the evidence and inferences in the light most favorable to Brett/Robinson, there is insufficient evidence from which a jury could find that it was objectively reasonable for Brett/Robinson to delay notice nearly two years after the occurrence. Thus, Nationwide does not owe a duty to defend or a duty to indemnify. Nationwide's motion for summary judgment, (Doc. 47), is **granted**. Judgment will be set out by separate order. See Fed. R. Civ. P. 58(a).

**DONE** and **ORDERED** this **10th** day of **July 2024**.

> **s / Kristi K. DuBose**
> **KRISTI K. DuBOSE**
> **UNITED STATES DISTRICT JUDGE**